**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                )
DEFENDERS OF WILDLIFE, *et al.*                 )
                                                )
                    Plaintiffs,                 )
                                                )
        v.                                      )        Civil Action No. 12-1833 (ABJ)
                                                )
KEN SALAZAR, *et al.*,                          )
                                                )
                    Defendants.                 )
_____)
                                                )
THE HUMANE SOCIETY OF                           )
THE UNITED STATES, *et al.*                      )
                                                )
                    Plaintiffs,                 )
                                                )
        v.                                      )        Civil Action No. 12-1965 (ABJ)
                                                )
U.S. FISH AND WILDLIFE                          )
SERVICE, *et al.*,                              )
                                                )
                    Defendants.                 )
_____)

## ORDER

        This case concerns the decision by defendant United States Fish and Wildlife Service

("FWS") to remove the Wyoming portion of the northern Rocky Mountain gray wolf from the

list of endangered species protected under the Endangered Species Act ("ESA").  *See* 77 Fed.

Reg. 55,530 (Sept. 10, 2012) ("Delisting Rule").  Defendants Secretary of the Interior Ken

Salazar, FWS, and FWS Director Dan Ashe move to transfer venue to the U.S. District Court for

the District of Wyoming pursuant to 28 U.S.C. § 1404(a).  *See* Fed. Defs.' Mot. to Transfer

Venue to the Distr. of Wyoming [Dkt. # 3] ("Fed. Defs.' Mot.").  Plaintiffs Defenders of

Wildlife, Natural Resources Defense Council ("NRDC"), Sierra Club, Center for Biological

Diversity ("CBD"), The Humane Society of the United States, and The Fund for Animals oppose the motion.[1]  *See* Defenders' Opp. to Fed. Defs.' Mot. ("Defenders' Opp.") [Dkt. # 9]; *Amicus Curiae* Br. of Humane Society and Fund for Animals in Opp. to Fed. Defs.' Mot. ("Hum. Soc. Opp.") [Dkt. # 15].[2]  For the reasons stated below, defendants' motion to transfer will be denied.

## BACKGROUND

The ESA was enacted in 1973 as a federal program for the conservation of endangered and threatened species.  16 U.S.C. § 1531(b).  This case concerns the north Rocky Mountain gray wolf, which was among the first species placed on the endangered species list.  Compl. of Defenders of Wildlife, NRDC, Sierra Club, and CBD filed in 12-cv-1833 (ABJ) ("Defenders' Compl.") ¶ 2; Compl. of Humane Soc. and Fund for Animals filed in 12-cv-1965 (ABJ) ("Hum. Soc. Compl.") ¶ 3.  After a number of court rulings and various delisting rules by the FWS, the gray wolf was delisted in Idaho and Montana in 2011 but remained under federal protection in Wyoming.  Defenders' Compl. ¶ 5; Hum. Soc. Compl. ¶ 4, citing H.R. 1473, Pub. L. 112-10 § 1713 (2011).  On September 10, 2012, FWS issued the Delisting Rule, transferring management of gray wolves in Wyoming back to the state.  77 Fed. Reg. 55,530.  The Delisting Rule is the subject of plaintiffs' challenge in this Court.

Plaintiffs are non-profit environmental conservation organizations groups.  Defenders' Compl. ¶¶ 12–15; Hum. Soc. Compl. ¶¶ 13–14.  Two of the six plaintiffs are headquartered in the District of Columbia, and all but one of them have offices in the District of Columbia.

---

1       The Court consolidated *Defenders of Wildlife v. Salazar*, 12-cv-1833 (ABJ) and *Humane Society of the United States v. U.S. Fish and Wildlife Service*, 12-cv-1965 (ABJ) on December 21, 2012.  *See* Order for Consolidation [Dkt. # 12].

2       The Court also accepted *amicus curiae* briefs from the State of Wyoming.  *See* Wyoming's *Amicus Curiae* Br. in Supp. of Defs.' Mot. [Dkt. # 6]; Wyoming's *Amicus Curiae* Reply [Dkt. # 16].

Defenders' Compl. ¶¶ 12–15 (stating that Defenders of Wildlife is headquartered in Washington, D.C., NRDC is headquartered in New York, New York with offices in Washington, D.C., Sierra Club is headquartered in California, with offices in Washington, D.C., and CBD is based in Tucson, Arizona with offices in Washington, D.C.); Hum. Soc. Compl. at 1, 34 and ¶ 14 (showing The Humane Society's address as Washington, D.C. and stating that The Fund for Animals is headquartered in New York, New York with a campaign office in nearby Silver Spring, Maryland).

Defendant Ken Salazar is the United States Secretary of the Interior and has supervisory responsibility over FWS.  Defenders' Compl. ¶ 19; Hum. Soc. Compl. ¶ 19.  Defendant FWS is a federal agency within the Department of the Interior that is responsible for administering the ESA.  Defenders' Compl. ¶ 20; Hum. Soc. Compl. ¶ 17.  Defendant Dan Ashe is the Director of FWS.  Defenders' Compl. ¶ 20; Hum. Soc. Compl. ¶ 18.  All three are located in Washington, D.C.

## LEGAL FRAMEWORK

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  The defendant, as the moving party, bears the burden of establishing that transfer is proper.  *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).  The Court has "broad discretion to decide whether transfer from one jurisdiction to another is proper."  *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 45 (D.D.C. 2006), citing *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978).  The decision to transfer requires an "individualized, case-by-case consideration of convenience and fairness."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The threshold question under section 1404(a) is whether the action "might have been brought" in the transferee district.  When the federal government is a defendant in a civil action, the action may be brought in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(e).  Additionally, under the ESA's own venue provision, "[a]ny suit under this subsection may be brought in the judicial district in which the violation occurs."  16 U.S.C. § 1540(g)(3)(A).[3]  While venue is proper in the District of Columbia, plaintiffs could have brought the action in the District of Wyoming because the Delisting Rule directly affects gray wolves in Wyoming and the process of amending the state's wolf management plan – a prerequisite to the Delisting Rule – occurred in Wyoming.

After meeting the threshold requirement, the Court must balance case-specific private-interest and public-interest factors.  *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000).  Private-interest considerations include:  (1) the plaintiff's choice of forum, unless the balance of convenience weighs strongly in favor of the defendants; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.  *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).  Public-interest considerations include:  (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.  *Id.*  In this case, a number of factors point equally in either direction, but the Court concludes that the national interest in gray wolf preservation and the

---

3    "Because the ESA venue provision is written with a permissive 'may,' rather than a mandatory word such as 'must' or 'shall,' this lawsuit is clearly not restricted to the District of Columbia . . . ."  *Otter v. Salazar*, 718 F. Supp. 2d 62, 64 (D.D.C. 2010).

substantial deference owed to plaintiffs' choice of forum tip the balance of the relevant factors against transfer.

## ANALYSIS

### I.     Private-Interest Factors

Plaintiffs' choice of forum, the first private-interest factor, weighs heavily against transfer.  "Absent specific facts that would cause a district court to question plaintiffs' choice of forum, plaintiffs' choice is afforded substantial deference." *Wilderness Soc'y*, 104 F. Supp. 2d at 12.  The Court must give "paramount consideration" to the plaintiffs' choice of forum, leaving the defendants with "the burden of demonstrating that an action should be transferred." *Air Line Pilots Ass'n v. E. Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987).  This consideration is given less weight if defendants can show that plaintiffs' chosen forum "has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979).  In this case, plaintiffs' choice of forum must be afforded significant deference, and consideration of plaintiffs' choice is not diminished, because the District of Columbia is relevantly connected to the controversy.  Not only do five of the six plaintiff organizations have offices in Washington, D.C., but Washington, D.C. serves as headquarters of lead plaintiffs in the two consolidated cases, Defenders of Wildlife and The Humane Society.  *C.f. Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11 (D.D.C. 2007) (affording "great deference" to the plaintiffs' choice of forum, where at least one of five plaintiffs were headquartered).  Additionally, all defendants are located in Washington, D.C., and both plaintiffs and defendants frequently litigate in this district.

Defendants' choice of forum, the second private-interest factor, does not outweigh plaintiffs' choice.  "Defendant[s'] choice of forum must be accorded some weight" if defendants

present legitimate reasons for preferring to litigate in the transferee district. *Nat'l Wildlife Fed'n*, 437 F. Supp. 2d at 48. Defendants present legitimate reasons, for instance, if they can show that the harm to the species or habitat takes place in the transferee district and that the effects are felt by the people and environment of the transferee district. *See id.* at 46–47 (transferring the case to the Southern District of Florida because the harm to the species occurred there and the Army Corps' management of the lake at issue affected the people and environment there). In this case, defendants present legitimate reasons for preferring the District of Wyoming because the wolves affected by the Delisting Rule and the people affected by the state's hunting regulations are all located in Wyoming. But wolves inevitably travel into neighboring states, and the impact of the rule cannot be contained within state lines. *C.f. Sierra Club*, 523 F. Supp. 2d at 13 (recognizing that the geographical location of the land at issue "is not necessarily an indication" that the effects of litigation would be restricted to the district where the land is located). Given the wide-ranging implications of the Delisting Rule, defendants' choice of the District of Wyoming does not overcome the substantial deference afforded to plaintiffs' choice of the District of Columbia.

The third private-interest factor is whether the claim arose elsewhere. Courts must evaluate the location of the affected species or ecosystems, *Nat'l Wildlife Fed'n*, 437 F. Supp. 2d at 48, where the decision-making process occurred, and whether the decision made was the direct result of a directive from Washington, D.C. *See Trout Unlimited*, 944 F. Supp. at 17–18. This factor provides support for transfer, and there are aspects of the analysis that also support this Court retaining the case. The wolves most directly affected by the Delisting Rule are located in Wyoming. And, although the final Delisting Rule was promulgated by FWS from Washington, D.C., significant decision-making also took place in Wyoming. Wyoming Governor Matt Mead, Secretary Salazar, and Director Ashe met in Wyoming to discuss necessary amendments to the

state's wolf management plan.  Defenders' Opp. at 24; Fed. Defs.' Reply at 9.  Finally, the FWS's proposal to delist the gray wolf "relied heavily on Wyoming's 2011 wolf management plan" and changes to Wyoming state law and regulation.  Proposed Rule, 77 Fed. Reg. 25,664. But this is not a case where although the agency is headquartered in Washington and the final decision was signed here, the decision reflects only the work of regulators in the field; here, the Secretary of Interior, who is stationed in Washington, was personally involved.  So the third private interest factor is essentially neutral.

The convenience of the parties, the fourth private-interest factor, tilts slightly against transfer.  It would not be inconvenient for plaintiffs to litigate in the District of Wyoming, where they often travel and have previously litigated.  *See, e.g.*, *Wyo. State Snowmobile Ass'n. v. U.S. Fish & Wildlife Serv.*, 741 F. Supp. 2d 1245 (D. Wyo. 2010) (Defenders of Wildlife and CBD intervening as defendants); *Wyoming v. U.S. Dep't of Interior*, 360 F. Supp. 2d 1214 (D. Wyo. 2005) (Sierra Club and NRDC intervening as defendants).  But it is also not inconvenient for defendants to litigate in the District of Columbia, where the Department of the Interior and FWS are located and often litigate.  *See, e.g.*, *Defenders of Wildlife v. Salazar*, 698 F. Supp. 2d 141 (D.D.C. 2010) (naming the Secretary of Interior and Director of FWS as defendants, with the State of Wyoming intervening as a defendant).  In fact, the Court finds that it would be more convenient for defendants to litigate in D.C. than for plaintiffs to litigate in the District of Wyoming, because litigation in Washington, D.C. would not require defendants to travel and incur the associated costs in time and money.  By contrast, only plaintiff Sierra Club has an office in Wyoming, Defenders' Compl. ¶ 14, and the remaining plaintiffs would be required to travel if the case is litigated in the District of Wyoming.

The remaining private-interest factors – convenience of witnesses and ease of access to sources of proof – are irrelevant to the determination of transfer because this case will be decided based on judicial review of the administrative record. *See, e.g.*, 5 U.S.C. § 706 (in reviewing an agency action "the court shall review the whole record"); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) ("review is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision"). Witnesses will not be needed. Similarly, the administrative record can easily be transferred electronically, rendering the physical location of the records irrelevant.

After balancing the private interests of the parties, the Court concludes that the factors weigh against transfer. Defendants' choice of forum and Wyoming's role in giving rise to the claim do not surmount the "paramount consideration" given to plaintiffs' choice of forum.

## II.     Public-Interest Factors

The District of Wyoming's familiarity with governing laws, the first public-interest factor, does not favor transfer because this case arises under federal law and is not governed by Wyoming state law. This factor loses force when the issue involves federal law because courts follow the principle that all federal courts are "competent to decide federal issues correctly." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 n.6 (D.D.C. 2003), quoting *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (internal quotation marks omitted). While the District of Wyoming would be more familiar with the state's statutes in general, it does not appear that the District of Wyoming has yet opined on the state's newly enacted wolf management statutes. Further, this case requires simple analysis – not complex interpretation – of state laws, using standards set forth by federal environmental and administrative laws. And even though the District of Wyoming has previously considered gray

wolf delisting issues, numerous federal courts have considered similar issues, and all federal courts are presumed equally competent to decide the issue correctly.

The relative congestion of the courts, the second public-interest factor, favors transfer because the District of Wyoming is less congested than the District of Columbia. *See* Fed. Defs.' Mot. at 15, citing Administrative Office of the United States Courts, Federal Judicial Caseload Statistics, Table C-5. But relative congestion of the courts "alone is not sufficient reason for transfer." *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C. Cir. 1974).

Finally, the "local interest in having localized controversies decided at home," the third public-interest factor, weighs against transfer because this case implicates national concerns. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). Whether a controversy is local in nature depends on seven factors: (1) where the challenged decision was made, (2) whether the decision directly affected the citizens of the transferee state, (3) the location of the controversy, (4) whether the issue involved federal constitutional issues rather than local property laws or statutes, (5) whether the controversy involved issues of state law, (6) whether the controversy has some national significance, and (7) whether there was personal involvement by a D.C. official. *Nat'l Wildlife Fed'n*, 437 F. Supp. 2d at 49 (citations omitted). While the Delisting Rule directly affects citizens of Wyoming and the controversy is centered in Wyoming, the remaining factors implicate a strong national interest in the controversy: the delisting decision was made in Washington, D.C., the case involves issues of federal law, and Secretary Salazar and Director Ashe were both personally involved in promulgating the Delisting Rule.

Most considerably, the issue of gray wolf delisting in Wyoming has great national significance. First, preservation of the gray wolf is an issue of national concern. The delisting of gray wolves in Wyoming has attracted – and continues to attract – considerable national media

attention. Defenders' Opp. at 5 n. 4. During the comment period on the Delisting Rule, FWS received nearly 250,000 comments from around the country and the world, *id.* at 13, citing regulations.gov, Docket FWS-R6-ES-2011-0039 (Exhibit R), which further indicates the national significance of gray wolf preservation. Second, the Delisting Rule impacts a wolf population that spans the entire northern Rocky Mountains, encompassing not only Wyoming but also Montana, Idaho, and parts of Washington, Oregon, and Utah. Although the Delisting Rule is aimed at gray wolves located in Wyoming, wolves often cross state lines, sometimes traveling hundreds of miles. Defenders' Opp. at 11. Third, the Delisting Rule threatens the gray wolf population in Yellowstone National Park, and "conserving the scenery, natural objects and wildlife of [Yellowstone] is a matter of great national importance." *Greater Yellowstone Coal. v. Kempthorne*, 2008 WL 1862298, at *5 (D.D.C. Apr. 24, 2008). The Delisting Rule directly impacts the Yellowstone wolf population because Yellowstone wolves can and do cross park boundaries into state-managed land.

Defendants point to a decision by the District of Colorado to transfer to the District of Wyoming another case challenging the Delisting Rule as reason for this Court to do the same. *See* Fed. Defs.' Not. of Suppl. Authority [Dkt. # 19], attaching *WildEarth Guardians v. U.S. Fish and Wildlife Serv.*, CA No. 12-cv-3085-AP, 2013 WL 136204 (D. Co. Jan. 9, 2013). But unlike in this case, the factors in the *WildEarth* case tipped in favor of transfer because the weight of the plaintiffs' choice of forum was diminished: Colorado had little connection to the litigants or the operative facts. *Id.* at * 3 (holding that the plaintiffs' choice of forum was entitled to little weight because "Plaintiffs' principal places of business are not located in Colorado and the vast majority of the operative facts took place in Wyoming"). As explained above, that is the not situation with respect to the District of Columbia.

Defendants also cite as supplemental authority another case from the U.S. District Court for the District of Columbia in further support of their position.  *See* Defs.' Not. of Supp. Authority [Dkt. # 22], citing *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, Civ. No. 12-708 (RCL), 2013 WL 524407, at \*2–3 (D.D.C. Feb. 13, 2013).  The court there decided to transfer a case involving land located in Wyoming to the District of Wyoming, in large part "to avoid multiplicity of litigation as a result of a single transaction."  *WildEarth Guardians*, 2013 WL 524407 \*3.  While litigation in another forum is a relevant factor to consider in deciding a motion to transfer, it is only one factor affecting the analysis.  *See Fund for Animals v. Norton*, 352 F. Supp. 2d 1, 2 (D.D.C. 2005) (declining to transfer case to Wyoming despite pending litigation in District of Wyoming on similar issues).  In this case, the pendency of a similar action in the District of Wyoming it does not overcome the substantial deference given the plaintiffs' choice of forum in this case.  Further, there is not complete overlap in the two litigations.  *See* Resp. to Fed. Defs' 2d Not. of Suppl. Authority [Dkt. # 23] at 2 (noting that the case in the District of Wyoming includes a claim under the National Environmental Policy Act that is not raised by plaintiffs here).

The Court concludes that the significant national interests implicated by gray wolf preservation and the "paramount consideration" owed to plaintiffs' choice of forum weigh against transfer.

**CONCLUSION**

For the reasons stated above, defendants' motion for transfer is DENIED.

AMY BERMAN JACKSON
United States District Judge

DATE:  April 11, 2013