Timothy J. Preso
Earthjustice
313 East Main Street
Bozeman, MT 59715
(406) 586-9699
Fax: (406) 586-9695
tpreso@earthjustice.org

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiffs,<br><br>vs.<br><br>KEN SALAZAR, Secretary of the Interior; DAN ASHE, U.S. Fish and Wildlife Service Director; and UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>Defendants. | Case No. 1:12-CV-01833-ABJ |
| THE HUMANE SOCIETY OF THE UNITED STATES, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. FISH AND WILDLIFE SERVICE, et al.,<br><br>Defendants. | Case No. 1:12-CV-01965-ABJ |

**PLAINTIFFS DEFENDERS OF WILDLIFE, ET AL.'S MEMORANDUM IN
OPPOSITION TO WYOMING'S RULE 59(e) MOTION TO ALTER OR AMEND
JUDGMENT AND RULE 62(b) MOTION TO STAY**

Plaintiffs Defenders of Wildlife, Natural Resources Defense Council, Sierra Club, and Center for Biological Diversity in Case No. 1:12-CV-1833-ABJ hereby respond to Wyoming's motions under Federal Rules of Civil Procedure 59(e) and 62(b) (Docs. 69 and 70).[1]  Wyoming's motions should be denied.  Throughout the 22-month course of this litigation, Wyoming steadfastly adhered to its position that it need not adopt enforceable regulatory mechanisms to ensure an adequate buffer above the bare-minimum allowable wolf population under the State's jurisdiction.  Then, on the very next day after this Court invalidated the 2012 Wyoming Delisting Rule, 77 Fed. Reg. 55,530, 55,596 (Sept. 10, 2012), under the Endangered Species Act ("ESA"), 16 U.S.C. §1531 et seq., Wyoming suddenly and strategically reversed course.  The State announced its immediate adoption of an emergency rule to make two of its wolf management documents legally enforceable and its initiation of a rulemaking process to make this change permanent.  On this basis, the State asks this Court to abruptly reverse its final judgment, to determine that Wyoming's regulatory mechanisms are now sufficient to warrant a renewed wolf delisting under the ESA, and to affirm the validity of the Wyoming Delisting Rule.  However, as set forth below, Wyoming's deathbed conversion does not justify the extraordinary relief that the State seeks.  This Court should reject Wyoming's arguments and leave unaltered the considered judgment reflected in the Memorandum Opinion and Order of September 23, 2014.

---

[1] This morning, the federal defendants filed a separate Rule 59(e) Motion to Alter or Amend Judgment or, in the Alternative, to Stay Vacatur (Doc. 72) on grounds distinct from those supporting Wyoming's motions.  Plaintiffs will respond separately to the federal defendants' motion—and the related motion filed by intervenors Safari Club International, National Rifle Association, and Rocky Mountain Elk Foundation (Doc. 74)—in due course, consistent with LCvR 7(b).  Federal defendants also filed a response to Wyoming's motions under Rules 59(e) and 62(b), in which they wrongly suggest that this Court should consider the merits of federal defendants' own Rule 59(e) motion concerning remand without vacatur in evaluating Wyoming's Motion to Stay.  Fed. Resp. to Wyo. Stay Mot. at 5 (Doc. 73).  Such request is improper before all parties have had the opportunity to respond on the merits of the federal defendants' motion.

## I.   WYOMING IS NOT ENTITLED TO RELIEF UNDER RULE 59(e)

Wyoming's motion to alter or amend this Court's judgment under Federal Rule of Civil Procedure 59(e) is meritless. Accordingly, a stay of this Court's final judgment is unwarranted and Wyoming's motion to amend that judgment should be denied.

Rule 59(e) has the "clear and narrow aim" of establishing that a "district court possesses the power to correct its own mistakes," White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 450 (1982) (emphasis added); it does not provide "a chance for [the losing party] to correct poor strategic choices," SEC v. Bilzerian, 729 F. Supp. 2d 9, 15 (D.D.C. 2010). Having rolled the dice on its theory that an unenforceable commitment to maintain a buffer above the minimum gray wolf recovery standard satisfies the ESA, Wyoming cannot invoke the "rarely used and disfavored remedy" provided by Rule 59(e) to avoid the consequences of its strategic choice. Id. at 17. Even assuming that Wyoming's emergency rule giving its Gray Wolf Management Plan and Addendum legal effect constituted "new evidence" under Rule 59(e)—which it does not—the rule does not provide a basis for amending this Court's final judgment. In arguing to the contrary, the State defies fundamental administrative law principles regarding the limits of judicial review, overlooks the logical and legal shortcomings of its newly minted regulatory initiatives, ignores the fact that plaintiffs have mounted numerous challenges to the delisting rule that extend well beyond the buffer deficiency Wyoming purports to address with its new rulemaking, and improperly seeks to substitute this Court for the U.S. Fish and Wildlife Service ("FWS") in the delisting process established by the ESA.

### A. Wyoming Has Not Proffered "New Evidence" Warranting Relief Under Rule 59(e)[2]

Wyoming's motion under Rule 59(e) fails at the outset because the State has not proffered "new evidence" warranting relief under that rule. To establish a right to relief under Rule 59(e), the moving party must establish an intervening change in controlling law, the discovery of evidence that was not previously available "despite the exercise of due diligence," or the need to correct a clear error in the court's judgment or prevent manifest injustice. Niedermeyer v. Office of Baucus, 153. F. Supp. 2d 23, 28, 29 (D.D.C. 2001) (citation omitted). The movant must further show that the grounds for its motion "present an extraordinary circumstance worthy of a Rule 59(e) order" disturbing the Court's final judgment. Bilzerian, 729 F. Supp. 2d at 17.

Here, Wyoming's offer of "new evidence"—consisting of an emergency rule the State itself manufactured the day after this Court's judgment issued—cannot justify the extraordinary relief it seeks. "[A]mendments post-judgment on the basis of new evidence are restricted to evidence that is newly discovered or previously unavailable despite the exercise of due diligence." Niedermeier, 153 F. Supp. 2d at 29 (citing Alton & S. Ry. Co. v. Bhd. Of Maint. of Way Employees, 899 F. Supp. 646, 648 (D.D.C. 1995), aff'd, 72 F.3d 919 (D.C. Cir. 1995)). This is because "Rule 59(e) motions are aimed at reconsideration, not initial consideration. Accordingly, a Rule 59(e) motion may not be used to raise arguments or present evidence that could have been raised prior to the entry of judgment." GSS Group v. Nat'l Port Auth., 680 F.3d 805, 812 (D.C. Cir. 2012) (quotations and alteration omitted). As confirmed by its swift adoption of the emergency rule, Wyoming could have given its Gray Wolf Management Plan

---

[2] Points I.A and B of plaintiffs' opposition brief respond to the questions raised in this Court's Minute Order of September 26, 2014.

and Addendum legal effect at any time prior to this Court's judgment. The State chose not to do so, instead gambling that it would prevail before this Court by arguing that a non-binding commitment to maintain a population buffer satisfies the ESA. Having made that strategic choice, the State cannot rescue its foregone opportunity after final judgment under the guise of "new evidence." See, e.g., Slate v. Am. Broadcasting Cos., ---F. Supp. 2d.---, 2013 WL 6713178, at *2 (D.D.C. Dec. 20, 2013) ("Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment, or a chance for [a party] to correct poor strategic choices.") (internal quotations omitted). Moreover, Wyoming's strategic post-judgment decision to adopt the emergency rule does not present the requisite "extraordinary circumstance" necessary for relief under Rule 59(e). Bilzerian, 729 F. Supp. 2d at 17. One can imagine infinite circumstances in which a losing party could elect to alter its conduct following adverse judgment in an attempt to comply with the court's decision. This routine circumstance is not extraordinary and cannot justify relief under Rule 59(e).

      **B.**    **Wyoming's Purported "New Evidence" Is Outside the Administrative Record and Cannot Supply Grounds for Upholding the Delisting Rule**

Even assuming for the sake of argument that the emergency rule constitutes "new evidence" within the meaning of Rule 59(e)—which it does not—the emergency rule cannot provide a basis for amending the Court's final judgment that vacated the delisting rule. Under fundamental tenets of administrative law, this Court cannot uphold the delisting rule on the basis of evidence never reviewed or addressed by FWS. For this reason too, Wyoming's Rule 59(e) motion is meritless. See Odhiambo v. Republic of Kenya, 947 F. Supp. 2d 30, 37 (D.D.C. 2013) (denying Rule 59(e) motion where proffered evidence was not new and, in any event, did not cure jurisdictional defects underlying court's prior judgment).

"Since the ESA does not specify a standard of review, judicial review is governed by section 706 of the Administrative Procedure Act (APA), 5 U.S.C. § 706 (1976)." <u>Cabinet Mountains Wilderness v. Peterson</u>, 685 F.2d 678, 685 (D.C. Cir. 1982).  Under the APA, courts must base their review of agency action on "the whole record" before the agency at the time it made its decision.  5 U.S.C. § 706.  It is elementary that a court may not affirm agency action based on evidence the agency never considered or a rationale the agency never offered.  <u>See</u> <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947) (court reviewing agency action "must judge the propriety of such action solely by the grounds invoked by the agency").  Yet here, Wyoming asks this Court to modify its "analysis of the adequate regulatory mechanisms issue," Wyo. Stay Mot. at 5, based on information that FWS never even reviewed before making the decision challenged in this case (i.e., an emergency rule that post-dates the delisting rule and the promise of a further state rulemaking).  This is impermissible under the APA and precludes relief under Rule 59(e).  <u>See</u> <u>Chenery Corp.</u>, 332 U.S. at 196.

  **C.** **Wyoming's Rulemaking Initiatives Do Not Resolve the Population Buffer Issue That They Purport to Address**

That Wyoming's proffered evidence is neither new nor reviewable by this Court in the instant proceeding is fatal to the State's Rule 59(e) motion.  Wyoming's motion is further flawed because neither the temporary emergency rule nor Wyoming's promise of a future, more permanent rulemaking constitute adequate regulatory mechanisms to resolve the population buffer issue that they purport to address.

Wyoming's post-judgment motions announce two rulemaking initiatives—the first being an emergency rule adopting Wyoming's 2011 Wolf Management Plan and 2012 Addendum to that plan, and the second being initiation of a formal rulemaking process by which Wyoming promises to permanently adopt an identical rule.  <u>See</u> Aff. of Michael Choma & Exhibits A, B

(Doc. 69-1) ("Choma Aff."). Wyoming claims that, as a result of these rulemaking initiatives, "the legal basis for the decision to set aside and vacate the 2012 Wyoming delisting rule no longer exists." Wyo. Stay Mot. at 5. Wyoming is wrong.

As an initial matter, Wyoming admits that its emergency rule may remain in force for no more than 240 days under Wyoming law. See Choma Aff. ¶ 3. Given this limitation, Wyoming promises to enact a permanent regulation no later than November 13-14, 2014. See id. Yet as this Court just observed, case law prohibits FWS from relying on "promises of proposed future actions" to provide needed regulatory mechanisms under the ESA. See Memorandum Opinion at 23 (Doc. 68) ("Mem. Op.") (citing Biodiversity Legal Found. v. Babbitt, 943 F. Supp. 23, 26 (D.D.C. 1996)). Wyoming's request for post-judgment relief defies this precedent. Wyoming asks this Court to conclude that the state has remedied FWS's illegal reliance on Wyoming's "mere assurances," Mem. Op. at 26, based on nothing more than new "mere assurances" from Wyoming that it will adopt a permanent rule giving its management plan and addendum legal effect later this fall. Given that Wyoming's formal rulemaking process requires an opportunity for public comment, including a public hearing, there is no way that Wyoming can guarantee the outcome of that process at this time unless the State is prepared to admit that it has predetermined the rulemaking result regardless of any public responses that it receives.[3]

---

[3] Predetermining the outcome of the rulemaking process would violate state law. Wyoming's Administrative Procedure Act requires that administrative agencies conducting rulemakings "shall consider fully all written and oral submissions respecting the proposed rule." Wyo. Stat. § 16-3-103(a)(ii)(B); see also Tri-State Generation & Transmission Ass'n, Inc. v. Envtl. Quality Council, 590 P.2d 1324, 1332 (Wyo. 1979) (stating that court considering challenge to administrative rule must assess whether agency "fully considered" comments submitted during rulemaking process). Further, "[a] rule that is promulgated without observance to proper procedure is void." Wyo. Dep't of Envtl. Quality v. Wyo. Outdoor Council, 286 P.3d 1045, 1050 (Wyo. 2012).

More fundamentally, the substance of Wyoming's emergency rule and proposed permanent rulemaking does not provide an adequate regulatory mechanism to address the ESA violation identified by this Court in its September 23, 2014 ruling. Wyoming's emergency rule simply embodies the state's Wolf Management Plan and Addendum in a formal state regulation. However, elevating these documents to regulatory status does not remedy the established deficiencies in their substance. As this Court has observed, FWS's peer review of Wyoming's Wolf Management Plan yielded criticisms that "the references in the state's materials to a minimum population 'buffer' above the minimum number of wolves to be protected [were] problematic because that buffer was vague and undefined." Mem. Op. at 10; see also AR 737 (December 2011 peer review report: "the Plan as written does not do an adequate job of explaining how wolf populations will be maintained and how recovery will be maintained"; "[i]t is clear that more than one panelist believes that there is a need for explicit buffering"). In response to such criticisms, Wyoming developed the Addendum, which did not resolve the problems identified by the peer reviewers. To the contrary, "Drs. Mills and Vucetich took issue with the lack of a specific numeric buffer as in the first review, and Dr. Vucetich maintained his position that the risk involved was undefined and that amendments to the state's wolf management program were cosmetic and lacked detail." Mem. Op. at 11 (citing AR 861-62). Indeed, the Addendum states only that "[t]he size of the buffer will be determined through an adaptive management approach." Id. As FWS's peer reviewers commented, "[k]nowing the size of this buffer and the justification for it are critical for understanding whether Wyoming's approach to wolf management is likely to maintain Wyoming's wolf population above recovery levels." AR 930 (Vucetich); see also AR 921 (Mills criticizing addendum's lack of "commitment to a meaningful population buffer").

Wyoming now asks this Court to accept that imbuing the Wolf Management Plan and Addendum with the force of state law resolves the regulatory-mechanisms deficiency in this case despite the fact that those documents fail to contain the specific commitments that peer reviewers identified as "critical" to the adequacy of Wyoming's regulatory program.  AR 930.  Yet the ESA requires "a set of regulations [that] is concrete and specific enough to ensure that it will in fact be implemented."  Sw. Ctr. for Biological Diversity v. Norton, 2002 WL 1733618, at *9 (D.D.C. July 29, 2002).  Wyoming's Wolf Management Plan and Addendum fall short of that standard, regardless of whether they are embodied in a state regulation.  At a minimum, the question of whether adopting these vague planning documents as regulations provides adequate regulatory mechanisms for wolf delisting is not one that this Court can resolve on a Rule 59(e) motion, but rather one that FWS should be required to consider on remand in light of the guidance provided by this Court's September 23, 2014 ruling and the ultimate outcome of Wyoming's ongoing rulemaking.  See 16 U.S.C. § 1533(a)(1)(D) (requiring FWS to consider "the inadequacy of existing regulatory mechanisms" in listing and delisting decisions).  Accordingly, Wyoming's rulemaking activities provide no basis for relief under Rule 59(e).

**D.     Wyoming Ignores the Full Scope of Plaintiffs' Challenges to the State's Regulatory Mechanisms, Which Extend Beyond the Buffer Issue**

Wyoming's motion under Rule 59(e) likewise fails because the State ignores the full scope of plaintiffs' challenges to Wyoming's regulatory mechanisms, which extend well beyond the buffer issue that Wyoming purports to resolve with its administrative rule.  Wyoming's Rule 59(e) motion—and its request for a stay under Rule 62(b)—proceed from an apparent assumption that the only issue concerning the adequacy of the state's regulatory mechanisms under the ESA is the enforceability of the State's Wolf Management Plan and Addendum.  As discussed above, Wyoming's focus on enforceability alone overlooks the established defects in

the substance of the Plan and Addendum. But it also overlooks plaintiffs' challenges to other aspects of Wyoming's regulatory scheme.

Plaintiffs challenged the adequacy of Wyoming's regulatory mechanisms on the basis that they lacked an essential guarantee for an adequate buffer above Wyoming's minimum required wolf population. But plaintiffs also alleged that:

1. FWS unlawfully accepted Wyoming's program for issuing lethal take permits that allow landowners or livestock owners to kill wolves, given that Wyoming law:

    a. Mandates issuance of lethal take permits even when doing so would drive the wolf population down to inadequate, bare-minimum levels. See Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Summary Judgment at 17-19 (Doc. 48-1) ("Pls.' SJ Mem."); Plaintiffs' Consolidated Reply Memorandum in Support of Motion for Summary Judgment at 11-13 ("Pls.' SJ Reply").

    b. Authorizes such permits based on nebulous and subjective claims that wolves are "harassing" livestock. In accepting this provision, FWS relied on nothing more than a non-binding letter from Wyoming's governor assuring that this provision will not be read so broadly by the State as to authorize excessive wolf mortality. See Pls.' SJ Mem. at 19-20; Pls.' SJ Reply at 13-15.

    c. Fails to allow for suspension or cancellation of lethal take permits if necessary to ensure that genetic diversity and connectivity issues do not threaten the Wyoming wolf population in the future, which FWS itself identified as an important safeguard. See Pls.' SJ Mem. at 20-2l; Pls.' SJ Reply at 15-16.

2. FWS unlawfully dismissed the impacts of Wyoming's law that allows for the killing of wolves "doing damage to private property," which authorizes wolf killing in Wyoming even when the population drops below required minimum levels. See Pls.' SJ Mem. at 22-25; Pls. SJ Reply at 17-18.

3. FWS unlawfully accepted Wyoming's kill-on-sight policy for wolves roaming in a "predator zone" encompassing 83.5% of the state, based on an unsubstantiated assumption that the State would maintain an adequate buffer over bare-minimum population levels. See Pls.' SJ Mem. at 25-26; Pls.' SJ Reply at 18-19.

4. FWS unlawfully overlooked a peer reviewer's critique of Wyoming's approach to monitoring the wolf population, which appears likely to mask declines and allow the population to fall toward—or even below—minimum numbers without detection. See Pls.' SJ Mem. at 26-28; Pls.' SJ Reply at 19-20.

5. FWS irrationally determined that northern Rocky Mountains wolves will not be endangered by future genetic isolation under state management. In this regard, FWS unlawfully concluded that states will maintain the region's wolf population well above minimum recovery levels, state management will take account of and limit human-caused mortality in important wolf dispersal areas and periods, and human-assisted migration is an acceptable substitute for achieving natural gene flow. See Pls.' SJ Mem. at 32-39; Pls.' SJ Reply at 24-31.

This Court's September 23, 2014 Memorandum Opinion expressly declined to reach these issues given the Court's dispositive ruling on the foundational issue of Wyoming's inadequate commitment to a sufficient buffer above the minimum acceptable wolf population.

See Mem. Op. at 27 n.11, 32 n.13.[4] Nevertheless, these additional issues remain as independent challenges to the adequacy of Wyoming's regulatory mechanisms under the ESA. Further, they are not addressed by Wyoming's sudden commencement of rulemaking procedures. Some of these issues, such as Wyoming's overbroad mandates for issuance of lethal take permits and for the taking of wolves "doing damage to private property," arise from explicit Wyoming statutory provisions that cannot be trumped by the Wyoming Game and Fish Commission's administrative rulemaking. Others, such as FWS's irrational basis for dismissing concerns with Wyoming's "predator zone" and monitoring procedures, arise from the state's failure to guarantee a concrete and specific population buffer, which, as discussed above, remains an issue regardless of Wyoming's new rulemakings. Because these unresolved challenges provide independent grounds for vacating the delisting rule, Wyoming cannot prevail on a Rule 59(e) motion predicated on an emergency rulemaking that does nothing to address them.

The appropriate process for addressing plaintiffs' additional challenges to the delisting rule is for FWS to consider them on remand in light of the foundational guidance provided by this Court's September 23, 2014 Memorandum Opinion as well as Wyoming's new rulemakings and any other changes that Wyoming may wish to make to its wolf management scheme in the wake of this Court's ruling. By contrast, Wyoming's Rule 59(e) motion would require that this

---

[4] Wyoming therefore is incorrect in claiming that the Court's judgment included a finding of species recovery sufficient to support delisting. See Wyo. Stay Mot. at 2. In addressing the genetic requirement for wolf recovery, the Court upheld FWS's conclusion that genetic connectivity of wolves in the northern Rocky Mountains is currently adequate to justify the agency's finding of a recovered population. See Mem. Op. at 27-32. However, the Court did not address plaintiffs' argument that FWS irrationally determined that northern Rocky Mountains wolves will not be endangered by future inadequate genetic connectivity under state management. See id. at 32 n.13. As FWS recognized, a finding of current genetic connectivity is not, by itself, sufficient to support a finding of recovery warranting delisting; delisting of wolves is justifiable only if "the GYA wolf population will not be threatened by lower genetic diversity in the foreseeable future." 77 Fed. Reg. at 55,596.

11

Court now proceed to resolve these issues in order to determine whether it is appropriate to reinstate the Wyoming Delisting Rule. This is not the procedure established by Congress for making delisting decisions. The ESA requires FWS to make the determination whether wolves in Wyoming are threatened because of "the inadequacy of existing regulatory mechanisms." 16 U.S.C. § 1533(a)(1)(D). Wyoming offers no legitimate reason for this Court to step into the shoes of FWS in contravention of the statutory scheme.

## II. WYOMING HAS FAILED TO ESTABLISH GROUNDS FOR THIS COURT TO ISSUE A STAY UNDER RULE 62(b)

Because Wyoming's Rule 59(e) motion is irredeemably flawed, the State has necessarily failed to demonstrate that the "extraordinary remedy" of a stay is warranted in this case. Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985). In evaluating Wyoming's motion for a stay pending resolution of its motion to amend, this Court should consider the four "traditional stay factors": "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). Wyoming's motion for a stay does not satisfy any of these criteria. As described above, Wyoming has failed to demonstrate a likelihood of success on the merits of its Rule 59(e) motion to alter or amend this Court's September 23, 2014 judgment. In addition, Wyoming has failed to demonstrate that it

would suffer any legitimate irreparable harm in the absence of a stay, and the balance of harms and public interest do not favor a stay.[5]

### A. Wyoming's Claim of Irreparable Injury to its "Sovereignty Interests" Does Not Support a Stay of this Court's Final Judgment

Wyoming argues that this Court's September 23, 2014 Order "divested the State of management authority over the gray wolf population in Wyoming" which "causes irreparable injury [to] the state's sovereignty interests." Wyo. Stay Mot. at 5-6. Wyoming's argument fails because the State has not even demonstrated that it suffered an injury from the reinstatement of ESA protections, let alone that such injury will be irreparable.

Wyoming's claimed "sovereignty interests" are not harmed by this Court's Order because reinstatement of federal protections for wolves under the ESA does not encroach upon an area of traditional state concern. "Although States have important interests in regulating wildlife and natural resources within their borders, this authority is shared with the Federal Government when the Federal Government exercises one of its enumerated constitutional powers," as it does when it manages endangered and threatened species. Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 204 (1999) (citations omitted); see also Rancho Viejo, LLC v. Norton, 323 F.3d 1062, 1078-80 (D.C. Cir. 2003) ("regulation of the taking of endangered species 'does not involve an "area of traditional state concern," one to which 'States lay claim by right of history and expertise,'") (quoting Gibbs v. Babbitt, 214 F.3d 483, 499 (4th Cir. 2000)). Indeed, a federal district court already addressed, and rejected, Wyoming's claim that federal management

---

[5] Federal defendants agree that Wyoming cannot prevail on its Rule 59(e) motion on the basis of "new evidence," and supply no additional arguments on the balance of harms. Fed. Resp. to Wyo. Stay Mot. at 2-3, 5. As discussed in footnote 1 supra, federal defendants' arguments in support of their own Rule 59(e) motion concerning remand without vacatur should not be considered in evaluating the likelihood of success on the merits for purposes of resolving Wyoming's Stay Motion.

of gray wolves in Wyoming infringes upon the State's sovereign interests. In <u>Wyoming v. U.S. Dep't of Interior</u>, , the court held that "Wyoming's purported sovereignty in this area has been unmistakably pre-empted by Congress" in the ESA. 360 F. Supp. 2d 1214, 1230 (D. Wyo. 2005) (citation omitted). Given this Court's ruling that FWS impermissibly delisted wolves in Wyoming pursuant to the rule challenged in this case, the same conclusion applies here. While Wyoming appears to contend that the State's emergency rulemaking obviated any need for continued ESA listing of wolves in Wyoming, that contention is incorrect for the reasons stated above. Therefore, reinstating ESA protections for wolves causes no harm to Wyoming's sovereign interests. Furthermore, being forced to comply with a lawful regulation itself does not constitute irreparable harm. <u>Am. Hosp. Ass'n v. Harris</u>, 625 F.2d 1328, 1331 (7th Cir. 1980) (<u>citing</u> <u>A.O. Smith Corp. v. F.T.C.</u>, 530 F.2d 515, 527 (3d Cir. 1976) (compliance with a lawful regulation is not out of the ordinary; in order to constitute irreparable injury, "courts ought to harken to the basic principle of equity that the threatened injury must be, in some way, peculiar") (internal quotations omitted)). Accordingly, Wyoming suffers no irreparable injury due to this Court's order requiring its ongoing compliance with the ESA.[6]

### B. The Balance of Harms and Public Interest Do Not Favor a Stay

While Wyoming has failed to demonstrate any harm to its legitimate interests absent a stay, harm to plaintiffs and to the public interest if the unlawful Wyoming Delisting Rule is restored weighs heavily against granting the requested stay.

---

[6] Wyoming also invokes the interests of those "who have planned for months to hunt gray wolves in Wyoming" as the basis for expedited consideration of the stay motion, Wyo. Stay Mot. at 8, but those interests also are not harmed by this Court's Order given that Wyoming intends to refund those individuals any amounts paid for their purchases of wolf-hunting licenses. <u>See</u> WGFD, Wyoming Game and Fish Reacts to Federal District Judge Ruling on Wolf Management, <u>available at</u> http://wgfd.wyo.gov/web2011/news-1002256.aspx (last visited Sept. 29, 2014).

As an initial matter, Wyoming misstates the harm plaintiffs will suffer if a stay is issued. Wyoming states that "Plaintiffs will suffer no harm if the 2012 delisting rule remains in effect," Wyo. Stay Mot. at 6, suggesting that plaintiffs have accepted that Wyoming's regulatory mechanisms would be adequate if only they were legally enforceable. Wyo. Stay Mot. at 6. To the contrary, as specified above, Wyoming's emergency rulemaking does not resolve the population buffer issue that it purports to address, and plaintiffs' challenges to the 2012 delisting rule extend well beyond this issue. Reinstating Wyoming's authority to implement an unlawful management scheme that lacks essential protections for wolves would sweep these issues under the rug and thereby harm the interests that plaintiffs sought to vindicate through this litigation.

Contrary to Wyoming's assertion, this result would also harm the public interest. Cf. id. at 6-7. "In litigation involving the administration of regulatory statutes designed to promote the public interest, [the public interest] factor necessarily becomes crucial" in determining the propriety of a stay. Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam) (evaluating public interest in context of motion for stay pending appeal). As Wyoming observes, Wyo. Stay Mot. at 6, "'the judgment of Congress, deliberately expressed in legislation,'" is a strong indicator of the public interest. Shays v. Fed. Election Comm'n, 340 F. Supp. 2d 39, 53 (D.D.C. 2004) (quoting United States v. Oakland Cannabis Buyers' Co-op., 532 U.S. 483, 497 (2001)). But contrary to Wyoming's claim, the policies of the ESA do not support Wyoming's requested stay. "Congress has spoken in the plainest of words [in the ESA], making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as 'institutionalized caution.'" Tenn. Valley Auth. v. Hill, 437 U.S. 153, 194 (1978); see also Greater Yellowstone Coal. v. Servheen, 665 F.3d 1015, 1030 (9th Cir. 2011) (holding

15

that "ESA's 'policy of institutionalized caution'" counseled against delisting absent careful analysis by FWS of threats facing listed species) (citation omitted). Indeed, federal management of species under the ESA was intended to "arrest the 'race to the bottom' [in state wildlife regulation] in order to prevent interstate competition whose overall effect would damage the quality of the national environment." Rancho Viejo, LLC, 323 F.3d at 1079-80 (citation and quotation omitted). This policy has special force as applied to wolf management by Wyoming. As FWS has observed, "[i]n the past Wyoming has ... almost without exception encouraged wolf take to drive the wolf population down to minimum recovery levels." U.S. Fish and Wildlife Service, Final Rule to Identify the Northern Rocky Mountain Population of Gray Wolf as a Distinct Population Segment and to Revise the List of Endangered and Threatened Wildlife, 74 Fed. Reg. 15,123, 15,149 (Apr. 2, 2009). Thus, the public interest expressed by the ESA does not favor Wyoming's management of wolves where this Court has found that management inadequate; instead, the public interest favors denial of Wyoming's requested stay.[7]

---

[7] Intervenors Safari Club International, National Rifle Association, and Rocky Mountain Elk Foundation's additional allegations of harm also do not justify the requested stay. Intervenors claim that the Wyoming Game and Fish Department's ("WGFD") decision to refund $24,000 to individuals who purchased wolf-hunting licenses will harm the intervenors and the public because WGFD will be unable to use those funds "for the protection, management and conservation of Wyoming's wildlife." Resp. in Supp. of Wyo.'s Mot. To Stay by Def.-Intervenors Safari Club Int'l, the National Rifle Ass'n of Am., and Rocky Mountain Elk Found. (Doc. 71) ("Safari Club Stay Br."), at 5-6. However, WGFD's fiscal year 2014 budget is about $72 million. See WGFD, 2013 Annual Report, C-1, available at http://wgfd.wyo.gov/web2011/Departments/WGFD/pdfs/WGFDANNUALREPORT_20130005237.pdf (last visited Sept. 28, 2014). Accordingly, Intervenors' suggestion that $24,000 in lost revenue would materially undermine WGFD's programs is unfounded. The intervenors also speculate about dire consequences for Wyoming's ungulate populations, with associated revenue implications for the state, if wolf hunting is not permitted while this Court resolves Wyoming's Rule 59(e) motion. Safari Club Stay Br. at 7. But as plaintiffs already observed in response to the motion to intervene by the Wyoming Wolf Coalition, Wyoming actually seeks to reduce its elk and antelope numbers because they exceed the State's own population objectives. See Resp. to Wyo. Wolf Coal.-2013's Mot. to Intervene (Doc. 54), at 2. Thus, intervenors' claim that

## CONCLUSION

For the foregoing reasons, Wyoming's motions under Federal Rules of Civil Procedure 59(e) and 62(b) should be denied.

Respectfully submitted this 29th day of September, 2014.

        /s/Timothy J. Preso
Timothy J. Preso
Earthjustice
313 East Main Street
Bozeman, MT 59715
(406) 586-9699
Fax: (406) 586-9695
tpreso@earthjustice.org

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

        /s/Timothy J. Preso
Timothy J. Preso

---

"Wyoming's hunting opportunities for these other species could dwindle" and "reduce[] license revenues"—all pending resolution of Wyoming's Rule 59(e) motion—is entirely unsupported.